UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Celeste Ellwillig Dawkins,

                            Plaintiff,         Civ. No. 15-2753 (RHK/KMM)
                                                  **ORDER**

v.

Cory Fitch, *et al.*,

                            Defendants.

---

       This action arises out of Plaintiff Celeste Ellwillig Dawkins's arrest by Minneapolis police officer Cory Fitch on November 23, 2013. Dawkins alleges in her Complaint that Fitch used excessive force by striking her with his squad car, in violation of the Fourth Amendment to the United States Constitution. She further alleges that the City of Minneapolis (the "City") is liable for Fitch's actions on a failure-to-train theory.[1]

       Presently before the Court is Defendants' Motion for Summary Judgment (Doc. No. 29). Summary judgment is proper if, drawing all reasonable inferences in Dawkins's favor, there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). Defendants bear the burden of showing the material facts in the case are undisputed. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*); Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must

---

[1] The Complaint alleges additional claims, including a Monell claim against the City for allegedly permitting a pattern and practice of excessive force by officers. (See Compl. ¶ 32.) But in her Memorandum, Dawkins has addressed only her Fourth Amendment claim against Fitch and her failure-to-train claim, and the Court deems any other claims in the Complaint abandoned.

view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to Dawkins, Beard v. Banks, 548 U.S 521, 529-30 (2006); Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009), who must show through admissible evidence that specific facts exist creating a genuine issue for trial, Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013). With these precepts in mind, the Court has carefully reviewed the parties' submissions; being sufficiently advised, it will grant Defendants' Motion in part and deny it in part.

Most of the pertinent facts are undisputed – largely because a dashcam video recorded the events culminating in Dawkins's arrest. The record reveals that Fitch and his partner Jeffrey Sworski were on patrol on November 23, 2013, at approximately 3:00 a.m. when a vehicle driven by Dawkins passed Fitch's squad car, heading westbound on 16th Avenue North in Minneapolis. Fitch testified in his deposition that, in his rearview mirror, he could see the vehicle swerving and that it had a broken taillight, and he suspected the driver might be under the influence. He made a u-turn and sped to catch up, as Dawkins had turned into an alleyway and accelerated; Fitch believed she was attempting to flee. At the end of the alleyway, Dawkins turned left onto 17th Avenue North and then right onto Penn Avenue North at what Fitch described as "a high rate of speed." He activated his squad car's overhead lights and sirens to signal the driver to pull over, and he turned onto Penn Avenue to continue his pursuit. Immediately after turning onto Penn Avenue, Fitch saw a parked SUV along the curb and then observed Dawkins's vehicle parked a few car lengths ahead; he was surprised, as he expected a continuing pursuit. He observed the driver's door open and Dawkins exit, moving toward the rear of her vehicle.

At this point, Fitch turned his car in Dawkins's general direction.  He testified in his deposition that he did so in order to cut off Dawkins's escape route, to prevent her from fleeing.  Although he claims he did not intend to strike her, his vehicle drove directly into Dawkins and the rear of her car, knocking her to the ground in the process.  Fitch and Sworski then exited the squad car, as Dawkins lay prone on the sidewalk on her hands and knees.  She claims one of the officers yelled "bitch get down!" and "get on the fucking ground!" and kicked her repeatedly, but she could not identify which one.  Sworski, however, testified in his deposition that it was not him and, after reviewing the dashcam video (and accompanying audio), noted that it "sounded like" Fitch.  Dawkins complained to the officers that she was hurt and an ambulance was called; the next thing she remembers is awakening at Hennepin County Medical Center.  She claims she suffered temporary soreness and a permanent hip injury as a result of the incident.[2]  She later commenced this action against Fitch and the City; with discovery complete, Defendants now move for summary judgment on her claims.

The crux of Defendants' argument is that Fitch accidentally struck Dawkins with his squad car, and hence she was not "seized" under the Fourth Amendment.  He claims that he pressed the brakes in an attempt to stop before hitting her, but his car slid forward due to light frost on the ground.  And he claims it was *Dawkins* who in fact "ran into the front of the squad," rather than the car being driven into her.  (See Def. Mem. at 5.)

---

[2] Dawkins said little about her injuries in her deposition.  Fitch, on the other hand, submitted a Declaration in which he averred that Dawkins complained of "a broken hip, shoulder, and leg" to him and to HCMC, but hospital staff "could not identify any injury" to her.  (Fitch Decl. ¶ 17.)  No party has submitted medical records from the hospital, however.

To be sure, "a Fourth Amendment seizure occurs as a result of a car collision only where the police officer *intended* the collision to be the result." Hernandez v. Jarman, 340 F.3d 617, 623 (8th Cir. 2003) (emphasis added) (citing Roach v. City of Fredericktown, 882 F.2d 294, 296 (8th Cir. 1989)); accord, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) (no Fourth Amendment seizure exists where a "pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit, but accidentally stopped the suspect by crashing into him") (internal quotation marks and citation omitted). But in the Court's view, the record here does not ineluctably lead to the conclusion that Fitch *accidentally*, rather than *intentionally*, struck Dawkins with his car.

Most problematic for Defendants is the dashcam video. In addition to recording the scene directly in front of the squad car, the video contains a number of electronic boxes providing information about the car as the recording is being made; the boxes illuminate when, for example, the squad car's overhead lights are activated, the siren is turned on, or most pertinently, the brakes are being applied. And here, it is undisputed that the brakes box was *not* illuminated immediately prior to Dawkins being struck.[3] Moreover, having carefully watched (and re-watched) the video, the Court cannot say it is clear, as a matter of law, that the squad car's brakes were in fact being applied before Dawkins was hit. Further, it is undisputed – indeed, it *cannot* reasonably be disputed, based on the dashcam video – that Fitch turned his squad car in Dawkins's direction immediately before striking

---

[3] Defendants attempt to explain this away by arguing the video was not properly synced to the indicator boxes, but in the Court's view this simply provides an issue for jury resolution.

- 4 -

her. In the Court's view, the cumulative effect of this evidence, while perhaps not overwhelming, is sufficient for a reasonable jury to conclude that Fitch struck Dawkins intentionally rather than by accident. See, e.g., Epifan v. Roman, Civ. A. No. 3:11-cv-2591, 2014 WL 4828606, at *12-15 (D.N.J. Sept. 29, 2014) (denying summary judgment where officer struck plaintiff with police vehicle; officer's testimony that he was braking and did not intend to strike plaintiff, and that plaintiff ran into the front of his car, "amounts to a classic example of 'he said she said'" that required "credibility determinations and the weighing of evidence, both functions that are clearly within the province of the jury"); McCormack v. Town of Whitman, Civ. A. No. 10-10461, 2013 WL 1187093, at *7-8 (D. Mass. Mar. 20, 2013) (denying summary judgment despite officer's testimony he accidentally struck fleeing plaintiff when he drove his squad car in front of plaintiff in order to "head off" his escape).[4]

At bottom, the issue here is one of Fitch's intent, but "questions surrounding a party's intent or state of mind are typically questions of fact for the jury and, therefore, not suited for summary adjudication." Jarvin v. Cont'l Res, Inc., No. 4:14-CV-4124, 2016 WL 3566213, at *6 (D.S.D. June 27, 2016) (citation omitted). That is true in this case and, hence, Fitch is not entitled to summary judgment on Dawkins's excessive-force claim.

---

[4] The Court's conclusion is bolstered by evidence indicating that rather than asking if Dawkins had been injured, as one might expect following an accident, Fitch approached her, screamed expletives at her, and then kicked her. See, e.g., Bellmon v. City of Phila., 895 F. Supp. 2d 659, 666 (E.D. Pa. 2012) ("Evidence that the officers swore at the Plaintiff and expressed hostility to the Plaintiff's claims that the collision had injured him also support the inference that Officer Richardson acted deliberately in striking the Plaintiff with the patrol car.").

The Court reaches a different conclusion, however, with respect to Dawkins's failure-to-train claim. The exact contours of that claim are unclear from her brief, but regardless, she has proffered no evidence that the City has failed to adequately train its officers in the use of squad cars when arresting fleeing suspects. In fact, Fitch testified in his deposition that using a squad car to effect an arrest is the same as using deadly force, and he had, in fact, received training that the use of such force would be appropriate only if an officer believed a suspect posed a risk of death or great bodily injury to others – which he acknowledged was *not* the case here. In other words, the evidence suggests, at best, that Fitch engaged in a one-time *deviation* from his training, not that he received inadequate training or none at all. And Dawkins has proffered no evidence of similar incidents involving either Fitch or the Minneapolis police. See, e.g., City of Canton v. Harris, 489 U.S. 378, 388-89 (1989) (failure-to-train claim against municipality requires evidence of "deliberate indifference to the rights of persons with whom the police come into contact"); Remington v. Hoopes, 611 F. App'x 883, 886 (8th Cir. 2015) (*per curiam*) ("[W]e cannot infer the existence of an unconstitutional [government] policy[] or custom," as required for municipal liability, "from [a] single occurrence."); Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991) ("Generally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal [liability]."). The record simply does not support the failure-to-train claim.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 29) is **GRANTED IN PART** and **DENIED IN PART.** The Motion is **GRANTED** as to

Dawkins's claim against the City (Count 2 of the Complaint), and that claim is **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** with respect to Dawkins's excessive-force claim against Fitch (Count 1 of the Complaint).[5] In light of the foregoing, it is further **ORDERED** that the hearing on the Motion, currently scheduled for September 22, 2016, is **CANCELED**.

Dated: September 15, 2016                              s/Richard H. Kyle
                                                       RICHARD H. KYLE
                                                       United States District Judge

---

[5] In denying this portion of the Motion, the Court in no way expresses an opinion on Dawkins's likelihood of success at trial or her ability to survive a motion for judgment as a matter of law after the presentation of her case.